```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
INTERNATIONAL GEMMOLOGICAL            : 05 Civ. 2395(JGK)(JCF)
INSTITUTE, INC.,                      :
                                      :      REPORT AND
                    Plaintiff,        :    RECOMMENDATION
                                      :
     - against -                      :
                                      :
ABE RAFAEIL, a/k/a EBRAHIM RAPHAEL,   :
a/k/a "ABE," SHACE LULGJURAJ, SOL     :
RAFAEIL, DOMANI INTERNATIONAL         :
ENTERPRISES, EXPRESS FINE JEWELRY     :
MANUFACTURING CORP., EURO ANTIQUES    :
& GEMS, INC., a/k/a EURO ANTIQUES,    :
NEW YORK RAFAEIL DIAMONDS, a/k/a      :
RAFAEIL BROTHERS, a/k/a RAFAEIL       :
DIAMOND CO., REX JEWELRY LTD. a/k/a   :
REX JEWELERS, a/k/a REX JEWELRY, a/k/a:
REX OF NEW YORK, ROSEN DIAMOND CO.,   :
INC., a/k/a ROSEN DIAMONDS, a/k/a     :
ROSEN, SR 2003 CORP., UBEX USA, INC., :
WHEEL OF THE WORLD AUTO CORP., YAFA   :
JEWELRY INC., a/k/a YAFA, MANSOUR     :
FARSIJANY, a/k/a "AMIR," JOHN DOE 1   :
(DOMANI), JOHN DOE 2 (EXPRESS), JOHN  :
DOE 3 (EURO), JOHN DOE 4 (NEW YORK    :
RAFAEIL), JOHN DOE 5 (SR 2003), JOHN  :
DOE 6 (ROSEN DIAMOND), JOHN DOE 7     :
(UBEX), JOHN DOE 8 (WHEELS), and      :
JOHN DOE 9 (YAFA),                    :
                                      :
                    Defendants.       :
- - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:
```

This is an action brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. The plaintiff also brings pendant state law claims for conversion, fraud, breach of fiduciary duty, and unjust enrichment. Four defendants -- Shace Lulgjuraj, Rosen Diamond Co., Inc. ("Rosen Diamonds"), Ubex USA, Inc. ("Ubex"), and Mansour Farsijany --

1

failed to answer the complaint and default judgments were entered against them. The case was then referred to me for an inquest on damages against these defendants. Although the defaulting defendants were advised of the date of the inquest, they failed to appear. Therefore, the following findings are based on the evidence presented by the plaintiff.

Background

International Gemmological Institute, Inc. ("IGI") is a New York corporation that specializes in certifying and appraising gems. (Complaint ("Compl."), ¶ 3). Defendant Shace Lulgjuraj worked for IGI from January 1995 until October 2000 and December 2001 until January 2003 as an assistant to the President. (Compl., ¶ 29). Ms. Lulgjuraj's responsibilities included preparing checks for vendors, recording check information in IGI's check book, and handling cancelled checks. (Compl., ¶ 31). With help from the other defendants, Ms. Lulgjuraj used her position to embezzle funds from IGI. (Compl., ¶ 33).

At the behest of Abe Rafaeil, Ms. Lulgjuraj prepared checks with forged signatures for companies that were not entitled to receive money from IGI. (Compl., ¶¶ 35-36). These companies, with which Mr. Rafaeil was affiliated, included Domani International Enterprises, Euro Antiques & Gems, Inc., Express Fine Jewelry Manufacturing Corp., Rex Jewelry Ltd. ("Rex Jewelry"), Rosen Diamonds, Ubex, Yafa Jewelry Inc., and Wheel of the World Auto

2

Corp. (Compl., ¶¶ 35-36). Mansour Farsijany was named as a defendant because he is a manager of Rex. (Compl., ¶ 17). The managers of the other companies are also identified as defendants, although their names are unknown. (Compl., ¶¶ 18-25).

In exchange for the forged checks, Ms. Lulgjuraj received money and gifts from Mr. Rafaeil. The checks were then sold or cashed by Mr. Rafaeil and the other defendants. (Compl., ¶¶ 35-36). When the cancelled checks were returned to IGI, Ms. Lulgjuraj intercepted them to prevent detection. (Compl., ¶ 43). In order to camouflage her scheme, Ms. Lulgjuraj also falsified company records by claiming the checks were paid to companies with which IGI ordinarily conducted business. (Compl., ¶ 44). This alleged illegal activity occurred from January 1995 until December 2002. (Compl., ¶¶ 35, 48-55).

The plaintiff commenced this action on February 25, 2005. Several defendants answered the Complaint, and the suit against them is ongoing. Ms. Lulgjuraj, Rosen Diamonds, Ubex, and Mr. Farsijany, however, failed to answer. Accordingly, the Honorable John G. Koeltl, U.S.D.J., entered default judgments against them and referred the case to me for an inquest on damages.

## Discussion

### A. Prematurity

Rex Jewelry asserts that this inquest is premature and has asked me to delay determining damages until after the liability of

3

the remaining defendants has been decided.  This request appears to be motivated by concerns about the precedential effect my determination will have on any ultimate jury trial.  While other courts have granted similar requests in the past, I find that the balance of the equities in the instant case favors my proceeding with the inquest at this time.

The principles governing the default of some but not all defendants in a litigation derive from Frow v. De La Vega, 82 U.S. 552 (1872).  See Garafola v. Ecker Restoration Corp., No. 94 Civ. 7999, 1996 WL 312346, at *1 (S.D.N.Y. June 10, 1996).  In Frow, eight defendants were accused of jointly defrauding the plaintiff. 82 U.S. at 552-53.  One defendant, Frow, defaulted, while the rest proceeded to trial and prevailed against the plaintiff.  See id. at 553.  The plaintiff then sought to enforce the default judgment against Frow, who appealed.  See id.  Finding the situation "unseemly and absurd, as well as unauthorized by law," the Supreme Court set aside the default judgment.  Id. at 554.

Frow has been interpreted to prohibit entry of a default judgment against one of several defendants where the theory of recovery is joint liability, such that no one defendant may be liable unless all defendants are liable.  See U.S. Securities & Futures Corp. v. Irvine, No. 00 Civ. 2322, 2001 U.S. Dist. LEXIS 25167, at *11 (S.D.N.Y. May 23, 2001); 10 James Wm. Moore et al., Moore's Federal Practice § 55.25 at 55-46 (3d ed. 1999).  In such

a case, the defaulting defendant is barred from participating in further proceedings on the merits, but would be exonerated if the other defendants prevail. See Garafola, 1996 WL 312346, at *1.

In cases where the theory of recovery is joint and several liability, however, Frow does not directly apply. See Garafola, 1996 WL 312346, at *2. Since each defendant is accused of individually causing the entire injury, it would not be inconsistent to hold some but not all defendants liable. See Farberware, Inc. v. Groben, No. 89 Civ. 6240, 1991 WL 123964, at *3 (S.D.N.Y. July 3, 1991). Therefore, in joint and several liability cases the court may enter a default judgment against any defendant that fails to appear. See Montcalm Publishing Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992). Many courts, however, have refused to assess damages against defaulting defendants in these cases since doing so presents the possibility of judgments inconsistent with jury awards against the non-defaulting parties. See Lawrence v. Vaman Trading Co., No. 92 Civ. 0377, 1993 WL 190266, at *2 (S.D.N.Y. May 28, 1993). Instead, these courts have consolidated the inquest with the damages aspect of the trial. See Farberware, 1991 WL 123964, at *3.

The main justification for requiring such a delay has been judicial economy. See Miele v. Greyling, No. 94 Civ. 3674, 1995 WL 217554, at *3 (S.D.N.Y. April 13, 1995); In re Uranium Antitrust Litigation, 617 F.2d 1248, 1262 (7th Cir. 1980). Here, however,

the strain on judicial resources is so slight that this consideration must give way to the interests of the parties in proceeding with the inquest.

It is undisputed that the amount of damages that a plaintiff may recover from defaulting and non-defaulting defendants in a case based on joint and several liability should not differ. See Montcalm, 807 F. Supp. at 978; Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985). However, it is unclear why the mere possibility that such a circumstance may come to pass should prevent this Court from assessing damages. If a jury returns a verdict for a different amount than is assessed during this inquest, my ruling will be set aside and the jury's finding will prevail. This mild administrative inconvenience is clearly outweighed by the interests of the parties in proceeding with the damage assessment at this time.

The plaintiff in this case has suffered a significant monetary injury. Postponing the inquest would delay -- and perhaps jeopardize -- its recovery since a plaintiff cannot begin to collect on a judgment until it is final. During the potentially protracted litigation against the non-defaulting defendants, the defaulting defendants would have ample opportunity to spend, secrete, or otherwise protect their ill-gotten gains. If they are successful in doing so, the delayed inquest could permanently prevent the plaintiff from being made whole.

The non-defaulting defendants could also be injured by a postponed assessment of damages. If the defaulting parties are able to insulate themselves from judgment during the continuing litigation, the non-defaulting parties could be forced to satisfy the entire damage award without the possibility of contribution from the defaulting defendants. On the other hand, any fears that the non-defaulting parties have about the precedential effect of this inquest are baseless. It will have none. Even courts that have chosen to delay damage assessments in similar situations have acknowledged this point. See Lawrence, 1993 WL 190266, at *2 ("[The Court should] stay its determination of damages . . . not because the nondefaulters would be bound by the damage determination against the defaulters, but to avoid the problems of dealing with inconsistent damage determinations[.]").

The only parties that may experience prejudice from assessing damages now are the defaulting defendants, who could be temporarily deprived of an amount greater than the jury ultimately awards. However, it is also possible that the damages assessed by a jury will be the same as or greater than those assessed by this Court, in which case such prejudice would not come to pass. In any event, the interests of these defaulting defendants -- who have failed to respond and thereby admitted liability -- are significantly weaker than those of the plaintiff they injured, and any prejudice to the defaulting defendants could be easily corrected.

7

The mere possibility of inconvenience to the defaulting defendants should not require this Court to delay, and threaten, the plaintiff's recovery. Therefore, assessing damages is not premature and I will proceed with the inquest at this time.

B. Jurisdiction

The Court has subject matter jurisdiction over the RICO claims in this dispute pursuant to the RICO statute, 18 U.S.C. § 1964(c), and federal question jurisdiction, 28 U.S.C. § 1331. It can also exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. There is personal jurisdiction over Ms. Lulgjuraj because she is a resident of New York (Compl., ¶ 5); over Rosen Diamonds because it is a business organized and operated under the laws of New York (Compl., ¶ 12); over Ubex because it is a business located in New York (Compl., ¶ 14); and over Mr. Farsijany because he manages a corporation organized in New York (Compl., ¶¶ 11, 17).

C. Liability

When a defendant defaults, all of the plaintiff's factual allegations are accepted as true except those relating to damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). IGI's well-pled allegations establish violations of RICO and state law.

The plaintiff alleges that each defendant violated the RICO statute, converted the plaintiff's property, and received unjust enrichment. IGI also claims that Ms. Lulgjuraj committed fraud and breached her fiduciary duties. The other defendants are accused of aiding and abetting Ms. Lulgjuraj in committing these torts.

1. RICO Claims

To establish a civil RICO claim, the plaintiff must demonstrate that a RICO violation caused an injury to business or property. See DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). Proof of a RICO violation, in turn, requires showing that each of the defendants, "through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." Id. at 306.

In the RICO statute, "racketeering activity" is defined in terms of a long list of state and federal crimes. 18 U.S.C. § 1961(1). These enumerated crimes include mail fraud, bank fraud, and money laundering. 18 U.S.C. § 1961(1)(B). Mail fraud is committed when a person uses the mails to execute a scheme to defraud. 18 U.S.C. § 1341. Bank fraud involves obtaining money from a financial institution by means of fraudulent pretenses. 18 U.S.C. § 1344. Money laundering is committed when a person knowingly engages in a transaction that is either designed to conceal the proceeds of unlawful activity or involves criminally

derived property that is of a value greater than $10,000.  18 U.S.C. §§ 1956, 1957.

The RICO statute requires as least two acts of racketeering activity within a period of ten years to constitute a "pattern of racketeering activity."  18 U.S.C. § 1961(5); see also DeFalco, 244 F.3d at 320.  However, more is required than merely showing the minimum number of predicate acts.  It must also be proved that a relationship exists between the acts such that they pose a threat of continuing illegal activity.  See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).

The term "enterprise" is broadly defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  To directly or indirectly participate in an enterprise, however, a person must participate in the operation or management of the enterprise itself.  See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).  While participation is not limited to those with primary responsibility for the enterprise's affairs, some part in directing the enterprise's affairs is required.  See id. at 179.

The allegations in the plaintiff's Complaint establish that the defaulting defendants violated the RICO statute.  First, they utilized the mails to defraud the plaintiff by causing the mailing of each of the fraudulent checks by IGI's bank to IGI.  Their

scheme also involved bank fraud, since money was obtained from IGI's bank account with forged checks. A claim of money laundering has also been made out, because it has been alleged that the parties devised a scheme by which funds were illegally obtained, sought to conceal this fact, and engaged in transactions involving more than $10,000 with criminally derived property. This fraudulent use of IGI's bank account affected interstate commerce.

The allegations also support finding a pattern of racketeering activity. The predicate offenses cited are not only numerous enough to qualify as a pattern, but also display the type of continuing illegal activity prohibited by RICO.

Finally, the plaintiff's allegations establish participation by each defendant in the enterprise, which consisted of a group of individuals and businesses associated in fact. The allegations demonstrate that Ms. Lulgjuraj managed the bank and mail fraud offenses by forging checks and falsifying company records. The other defaulting defendants operated the money laundering and mail fraud activities by knowingly accepting forged checks, cashing them, attempting to conceal their illegal origin, and causing them to be delivered to IGI by mail.

Since the plaintiffs have demonstrated that the defendants' RICO violations injured their business, they have satisfied their burden of establishing a civil RICO claim.

### 2. State Law Claims

The tort of conversion is committed under New York law "when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997). The plaintiff's allegation that the defendants intentionally misappropriated IGI's funds satisfies the elements for the tort of conversion.

The elements of a claim of fraud in New York are a material misrepresentation or omission of fact made with knowledge of its falsity and with an intent to defraud, coupled with reasonable reliance on the part of the plaintiff that causes damage to the plaintiff. See Baker v. Dorfman, 239 F.3d 415, 423 (2d Cir. 2000). Aiding and abetting fraud requires "the existence of a fraud, defendant's knowledge of the fraud, and proof that the defendant provided substantial assistance to advance the fraud's commission." Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000); Fidelity Funding of California, Inc. v. Reinhold, 79 F. Supp. 2d 110, 122 (E.D.N.Y. 1997).

The false records kept by Ms. Lulgjuraj to prevent detection of her scheme qualify as a material misrepresentation for the purposes of New York's fraud law. IGI reasonably relied on Ms. Lulgjuraj's representations, which caused the plaintiff monetary damage. Therefore, a claim of fraud has been established against

Ms. Lulgjuraj. Although the other defaulting defendants did not directly commit such fraud against the plaintiff, they did aid and abet Ms. Lulgjuraj's actions. The defendants' knowing acceptance of and payment for Ms. Lulgjuraj's forged checks provided substantial assistance to advance the fraud's commission.

The elements of a New York claim for participating in a breach of fiduciary duty are that a breach by a fiduciary of obligations to another occurred, that the defendant knowingly induced or participated in the breach, and that the plaintiff suffered damages as a result. See Whitney v. Citibank, N.A., 782 F.3d 1106, 1115 (2d Cir. 1986). For a defendant to be liable for aiding and abetting a breach of fiduciary duty, it must also be shown that the defendant had actual knowledge of the breach. See In re Sharp International Corp., 403 F.3d 43, 49 (2d Cir. 2005).

The plaintiff alleges that Ms. Lulgjuraj owed a fiduciary duty to IGI, which she knowingly breached by misappropriating company funds. Since this situation caused damage to the plaintiff, Ms. Lulgjuraj can be held liable for her breach of fiduciary duty. Once again, the plaintiff demonstrates that the other defaulting defendants aided and abetted Ms. Lulgjuraj's tortious conduct by paying for and accepting the IGI checks with knowledge that they were forged.

To prevail on a claim for unjust enrichment in New York, a plaintiff must show that the defendant benefitted at the

plaintiff's expense and that equity and good conscience require restitution. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Here, the plaintiff has demonstrated that the defendants received money that they did not deserve. In such a situation, equity requires the defaulting defendants to provide restitution to the plaintiff for their unjust enrichment.

D. Damages

The plaintiff has provided copies of checks forged by Ms. Lulgjuraj and cashed by the other defendants in the amount of $6,080,108.48. (Exhs. 7 & 8 attached to Affidavit of Jerry Ehrenwald dated July 1, 2005). The defaulting defendants are jointly and severally liable for that amount under both state and federal law. Under the RICO statute, however, these actual damages should be trebled to $18,240,325.44. 18 U.S.C. § 1964(c). IGI also asks for prejudgment interest, post-judgment interest, and attorneys' fees.

Several courts have taken the view that prejudgment interest is inappropriate in RICO cases absent exceptional circumstances. See In re Crazy Eddie Securities Litigation, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996); Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993). Even if exceptional circumstances were not present in this case, prejudgment interest is available on the plaintiff's state law claims. New York Civil Practice Law and Rules ("CPLR") § 5001(a) ("Interest shall be recovered upon a sum

awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property[.]"). "Courts applying § 5001(a) have without qualification awarded interest as a matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible property interests." <u>Baker</u>, 239 F.3d at 425. Here, the defendants' conduct caused pecuniary damage to the plaintiff's property interests and prejudgment interest is therefore warranted.

Under New York law, interest is computed at the rate of nine percent per year and calculated from the earliest ascertainable date the cause of action existed. CPLR §§ 5001(b), 5004. The plaintiff seeks interest from December 31, 2002, the last day of the last year of stolen payments. This is an appropriate accrual date, and interest should therefore be awarded from that point until the date of judgment on the principal amount of $6,080,108.48.

A plaintiff who prevails on a RICO claim is also entitled to an award of costs, including reasonable attorneys' fees. 18 U.S.C. § 1964(c). IGI, however, has not submitted time records that would support such an award. Therefore, these costs should not be included in a judgment at this time.

<u>Conclusion</u>

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against Shace Lulgjuraj,

Rosen Diamonds, Ubex, and Mansour Farsijany, jointly and severally, in the amount of $18,240,325.44, together with interest at the rate of nine percent per year on the principal sum of $6,080,108.48 running from December 31, 2002, until the date of judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable John G. Koeltl, Room 1030, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         August 17, 2005

Copies mailed this date to:

Michael S. Devorkin, Esq.
Golenbock Eiseman Assor Bell
    & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, New York  10022

Jeremy L. Gutman, Esq.
251 East 61st Street
New York, New York  10021

Caroline Rule, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce De Leon, 9th Floor
Coral Gables, FL  33134

Mark S. Arisohn, Esq.
Goldman Gruder & Wood
200 Connecticut Avenue
Norwalk, CT  06854

Barry M. Okun, Esq.
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, New York  10017

Shace Lulgjuraj
99 Teakettle Spout Road
Mahopac, New York  10541

Mansour Farsijany
1405 Plandome Road
Manhasset, New York  11030

Rosen Diamond Co., Inc.
580 Fifth Avenue
New York, New York  10036

Ubex USA, Inc.
580 Fifth Avenue
New York, New York  10036